THE NEW YORK, CHICAGO & ST. LOUIS RD. CO. *v.*
BOWLES, ADMX.

(Decided February 17, 1930.)

*Mr. W. A. Eversman* and *Mr. C. W. Racine,* for
plaintiff in error.
*Messrs. Geer & Lane,* for defendant in error.

LLOYD, J. In an action commenced for the benefit
of the next of kin of Walter K. Bowles, Mabel
Bowles, as administratrix of his estate, obtained a
verdict and judgment of $10,000 against the plaintiff
in error, the New York, Chicago & St. Louis Rail-

road Company. We will refer to the administratrix as the plaintiff, to Walter K. Bowles as the decedent, and to the railroad company as the defendant.

The defendant seeks to reverse the judgment of the court of common pleas for the alleged reason that the court erred in refusing to direct a verdict in its favor at the conclusion of plaintiff's evidence and in refusing to do so at the conclusion of all of the evidence.

The first ground we need not discuss. The defendant, having proceeded with its evidence after the overruling of the motion for a directed verdict at the conclusion of plaintiff's evidence, waived the right to insist on that alleged error.

Did the trial court err in denying the motion of defendant for a directed verdict at the conclusion of all of the evidence?

The railway of defendant extends in a southerly or southwesterly direction from Toledo, and in the village of Maumee crosses practically at right angles a highway known as Key street, which street extends in a northwesterly direction from a highway called the River Road, crossing what was the Miami & Erie Canal by a bridge 60 feet long and 18 feet wide, and approximately 135 feet westerly of the railroad track. The railway track extends along the southeasterly bank of the canal, and is straightaway for about 990 feet from a curve northeasterly of the Key street crossing and for 600 or more feet southwesterly thereof. The level of the bridge is about two and one-half feet higher than the top of the rails. The decedent resided at Weston, Ohio, and was a salesman for the Garbe Hardware Company, of Toledo. He canvassed the territory assigned to him,

which included Maumee, for orders for washing machines and stoves. He had a brother living on Indiana street in Maumee, about two and one-half blocks west of the corner of Key and Sackett streets; Sackett street being the first street north of the canal, extending northerly into Key street. He had frequently stayed at his brother's home overnight, and lived there during the week of February 2, 1927. His brother generally left home for work about 6:30 o'clock, and decedent about 7 o'clock, in the morning. To reach his brother's home from the main business and residential portion of Maumee and from the River Road, which is a main highway along the Maumee river between Toledo and Maumee, decedent had to cross the track of defendant and the canal, but not necessarily at Key street. The decedent was furnished by his employer with a 1923 model Ford coupe, upon the rear of which had been built a box or platform for carrying packages. On February 2, 1927, decedent was driving his car on Key street in the direction of the River Road, and when upon the track of the defendant was struck by a south-bound passenger train and almost instantly killed. It was bright daylight at the time of the collision. There was no snow on the ground, the pavement was dry, and the sun was shining. The collision occurred at approximately 8:30 o'clock in the morning. No one actually saw the collision, but from marks on the automobile it seems to have been struck by the locomotive at a point a little to the rear of the center of the left side. The train was going at a speed of not to exceed 30 to 35 miles an hour, and neither the fireman nor the engineer saw the automobile until the crash, and both testified that the

locomotive bell was ringing and that the whistle had been blown for the Key street crossing 1,000 or 1,200 feet before it was reached. This testimony is not denied. The air brakes being at once applied, the train, consisting of locomotive, mail car, baggage car, and passenger coach, stopped with the rear thereof approximately 500 feet beyond the crossing. The driving seat in the automobile was on the left side thereof; the driver, of course, having the steering wheel and post immediately in front of him. The window on either side was about 12 inches wide, the doors of the car opening outward toward the rear. The automobile, after being struck, was carried about 50 feet southerly of the crossing, where it was thrown to the left or River Road side of the moving train, where it lay upside down. The decedent and the left-hand door of the automobile, or a part of it, were found on the same side of the track, about 550 feet southerly of the Key street crossing. Other than the testimony of a witness called by defendant, there is no evidence as to how the decedent came to be on the crossing at the time of the passing of the train. This witness, who was proceeding in an automobile from the River Road on Key street toward the canal bridge, testified: ''As I made a turn on Key street I looked around and I seen the train coming around the curve and about the same time I seen a yellow automobile [decedent's] coming over the approach of the bridge * * * on the further end of it.''

He further says: ''The next thing I knew I seen he was going to get hit and I turned my head around and I didn't pay any more attention until everything was over. I didn't want to see it.''

He states also that from the time he first saw the automobile, it kept continuously moving toward him.

Plaintiff claims that the defendant was negligent, proximately causing the death of decedent, in that it failed to maintain a sign at the Key street crossing, as required by Section 8852, General Code, and failed to stop or check the train after the employees in charge thereof became aware, or in the exercise of ordinary care would have become aware, of decedent's dangerous position. By this last allegation of negligence plaintiff invokes the so-called doctrine of last clear chance.

In answer to a written interrogatory, the jury found that at the time of the collision there was no crossing sign at Key street, and the evidence was such as to warrant this finding. Inasmuch as the jury found that there was no crossing sign, and the failure to maintain such a sign being a violation of statute, it follows that the defendant was negligent in this alleged respect as a matter of law.

In answer to another interrogatory, the jury found that the decedent knew that there was a railroad crossing south of the canal bridge on Key street, and the evidence was also such as to justify this finding. The purpose of such a sign is to give notice to approaching travelers of the proximity of a railroad crossing. The evidence shows that the track of defendant was plainly visible from the canal bridge over which decedent was approaching the crossing, and he must be held, therefore, to have seen it. A railway track is a warning of danger, and when its existence is known, its use and purpose and the likelihood of approaching trains cannot be ignored.

There is no claim that the speed of the approaching train was excessive, and no dispute in the evidence as to the whistle having been blown and the bell rung as the train approached Key street. Although there is no direct evidence that Bowles had theretofore driven across the canal bridge and the track on Key street, it is clear that he knew of the location of the railroad, its general direction, and, at other points, had crossed it many times. In our judgment there is no evidence upon which to base any finding in this regard except that reached by the jury.

The jury, in answer to two other interrogatories, found that the automobile of decedent stalled upon the track for 15 to 30 seconds before the collision, and counsel for plaintiff seriously contend that, although there is no direct evidence to support these findings, they are nevertheless justified by the inferences to be drawn from the facts and circumstances in evidence. Counsel for defendant is equally assertive that the record contains no evidence upon this subject. If decedent was stalled upon the track, the question of the negligence of the defendant was properly submitted to the jury; if there is no evidence of this alleged claim, then the trial judge should have directed a verdict. If the train had been proceeding through the village of Maumee at an excessive rate of speed, or in violation of an ordinance or statute, and there had been no other evidence as to the cause of the collision, the law presuming the decedent to be free of contributory negligence and indulging only in probabilities, it may be that under such circumstances the question of the negligence of the defendant and the proxi-

mate cause of decedent's death would be for the jury to determine. In the instant case, however, we have no violation of statute or ordinance as to the speed or operation of the train, and so far as plaintiff's evidence is concerned no explanation appears of how the collision occurred except the fact that it did occur, and that, as above stated, the automobile and the decedent and the left-hand door, or a part thereof, were found at the side of the track southerly of the street crossing. To infer from these facts not only that decedent's car was stalled upon the track, but that it was stalled for any appreciable length of time, and that decedent opened the door thereof and attempted to alight therefrom, seems to us to be indulging in possibilities instead of probabilities. But one witness saw the decedent before the collision. As hereinabove stated, his testimony is undisputed that he saw the decedent approaching on the bridge, and at the same time heard the whistle and saw the train approaching Key street, and that decedent continued to move toward the crossing without stopping until the time of the collision. We are constrained, therefore, to conclude that the record contains no evidence of any facts tending to sustain the petition of plaintiff, and that the trial court erred to the prejudice of the plaintiff in error in refusing to direct a verdict as requested.

The judgment of the court of common pleas is therefore reversed and final judgment entered in favor of plaintiff in error.

*Judgment reversed and judgment for plaintiff in error.*

Williams and Richards, JJ., concur.